2012-1696

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

## OIP TECHNOLOGIES, INC.

*Plaintiff-Appellant,*

**v.**

## AMAZON.COM, INC.

*Defendant-Appellee.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 12-CV-1233,
JUDGE EDWARD M. CHEN

_____

## PLAINTIFF-APPELLANT'S PETITION FOR REHEARING *EN BANC*

_____

Matthew D. Powers
Steven S. Cherensky
Paul T. Ehrlich
Aaron M. Nathan
Stefani C. Smith
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:  (650) 802-6000
Facsimile:  (650) 802-6001

*Attorneys for Plaintiff-Appellant OIP*                    July 13, 2015
*Technologies, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

OIP TECHNOLOGIES, INC. V. AMAZON.COM, INC.

No. 2012-1696

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant OIP Technologies, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is:

     OIP TECHNOLOGIES, INC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

     Same.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

     ENTREPRENEURS CAPITAL FUND VIII, L.P.
     NORWEST VENTURE PARTNERS VIII, L.P.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

     Tensegrity Law Group LLP:
     Matthew D. Powers, Steven S. Cherensky, Paul T. Ehrlich, Monica M. Eno, Stefani C. Smith, and Aaron M. Nathan

Dated:  July 13, 2015         /s/ *Matthew D. Powers*

                       Matthew D. Powers
                       Tensegrity Law Group LLP

# TABLE OF CONTENTS

STATEMENT OF COUNSEL PURSUANT TO FED. CIR. R. 35(b)....................1

INTRODUCTION...............................................................................................3

BACKGROUND.................................................................................................5

ARGUMENT .....................................................................................................8

I.     REHEARING *EN BANC* IS WARRANTED BECAUSE THE PANEL'S
       DECISION IS INCONSISTENT WITH *DIEHR*, *ALICE*, AND *BILSKI*......8

       A.     OIP's Claims Are Patent Eligible For The Same Reason That The
              *Diehr* Claims Were Eligible ................................................................8

       B.     The Panel Improperly Disregarded *Diehr* ........................................10

       C.     On The Facts In This Case, OIP's Claims Cannot Be Found
              Ineligible On The Pleadings ..............................................................12

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) ................................................................................................................. 13

*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) .................................. passim

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ..................................................... 2, 4, 9, 11

*BuySAFE Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) .......................... 3, 8

*Diamond v. Diehr*, 450 U.S. 175 (1981) ......................................................... passim

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277 (Fed. Cir. 2013) ................................................................................................................. 12

*Versata Dev. Group, Inc. v. SAP, Am., Inc.*, Appeal No. 2014-1194, 2015 U.S. App. LEXIS 11802 (Fed. Cir. July 9, 2015) 11

**Statutes**

35 U.S.C. Section 101 ........................................................................... 1, 4, 11, 13

### STATEMENT OF COUNSEL PURSUANT TO FED. CIR. R. 35(B)

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1.    Can district courts invalidate a novel invention under 35 U.S.C. § 101 by finding that it involves the implementation of an abstract concept, even though the claimed invention satisfies the patent-eligibility standard under *Alice*'s two-part framework because it improved an existing technological process?

2.    Can district courts invalidate patent claims under 35 U.S.C. § 101 by declaring them to be business methods applying a fundamental economic concept although they claim a patent eligible "process designed to solve a technological problem in 'conventional industry practice'" under *Diehr* and *Alice*?

3.    In ruling on a motion to dismiss, can a district court base its conclusion that a claim is drawn to abstract subject matter or adds no inventive step on its own *ex nihilo* factual determinations that are contrary to facts as pled in the complaint?

Based on my professional judgment, I believe the panel decision holding the claims at issue patent-ineligible under § 101 is contrary to the Supreme Court's decisions in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), *Diamond v. Diehr*, 450 U.S. 175 (1981), and *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

Dated:  July 13, 2015                  */s/ Matthew D. Powers*

Matthew D. Powers
Tensegrity Law Group LLP
Attorney of Record for OIP Technologies Inc.

# INTRODUCTION

In *Alice*, the Supreme Court explained the relevance of *Diehr* and affirmed its essential teaching: the *Diehr* claims were "patent eligible because they improved an existing technological process." *Alice*, 134 S. Ct. at 2358. Although the *Diehr* claims employed a "'well-known' mathematical equation" on a conventional computer, they were nonetheless eligible because they "used that equation in a process designed to solve a technological problem in 'conventional industry practice.'" *Id.* Specifically, in *Diehr*, "the claimed contribution to the art was the step of 'constantly measuring the actual temperature inside the mold' for synthetic rubber products," which addressed the drawbacks of conventional methods, which required basing the cure time on approximations of that temperature. *See BuySAFE Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (quoting *Diehr*). The record here shows—and the panel did not find otherwise—that OIP's claims likewise solved a technological problem in conventional industry practice by introducing a price-testing regime in which potential customers' actual demand for products can be measured, addressing the drawbacks of conventional methods, which required basing pricing decisions on approximations of that demand. OIP's claimed technology produced a real, measurable, and unexpected improvement in an existing industry, changing the

internal processes of the most sophisticated online retailer and saving it millions of dollars a year.

The Supreme Court's reaffirmation of *Diehr* should have ensured that courts did not lose sight of the forest for the trees—that the evaluation of whether a claim uses "conventional" components to implement an abstract concept will not subsume the ultimate inquiry into whether the claim actually improves a technological process. The *Diehr* patent claims famously used only conventional technologies to implement an abstract law of nature but were inventive because they produced a measurable improvement by a method that had not been previously employed. The panel topples *Diehr* from its rightful place in precedent as an equal and important articulation of how the specific use of an abstract idea becomes inventive, and in doing so turns *Alice* into a buzzsaw that cuts down every business-related claim that involves conventional computer elements without regard to whether the patentee has contributed a valuable industrial improvement.

Rehearing of this case *en banc* is warranted given the directly analogous nature of the *Diehr* claims and OIP's claims, and given the undisputed (and undisputable) facts that OIP's claims solved a technological problem in a conventional industry practice. By curing the panel's failure to apply the binding precedent of *Diehr* in view of *Alice* and *Bilski*, the *en banc* Court will also provide needed guidance about how *Diehr* is to be understood beyond the rubber-making

industry. Contrary to the panel decision, the rule of *Diehr* must be applied in **every** case, not just because it is controlling Supreme Court precedent, but because without it the rights of those who have contributed true technological innovation in the Internet age will be lost. That is what happened in the present case and that is why rehearing *en banc* is warranted.

Rehearing *en banc* is further warranted because the panel decision accepted the district court's fundamental disregard of the requirements of Rule 12 in basing its "abstract idea" and lack-of-inventive-step determinations on its own fact finding contrary to the facts as pled in OIP's complaint. While it is possible to make "abstract idea" determinations under the first prong of *Alice* at the pleading stage when this can actually be done as a pure matter of law, this Court's guidance is needed that Section 101 does not authorize district courts to make their own factual determinations in granting motions to dismiss when doing so discredits the facts as pled or fails to construe them in the light most favorable to the plaintiff.

## BACKGROUND

The patent claims at issue here are computer-implemented methods for "pricing a product for sale" in which vendors are able to "reach better pricing decisions through automatic estimation and measurement of actual demand to select prices." Slip Op. at 2-3. The patent explains that the claimed price-testing regime addresses the problem facing both brick-and-mortar vendors and e-

commerce vendors who must make pricing decisions based on estimates of the shape of the demand curve derived from qualitative factors, past experience, knowledge of market conditions, etc. *See id.* at 2. Using conventional pricing approaches, vendors are unable to respond to changing conditions and are not able to select optimal prices over time. *See id.* The claimed OIP technology improves on that conventional practice with a novel price-testing regime through which potential customers reveal their actual demand for the products in real-time, thus enabling price optimization. *See id.* at 4.

The factual record on appeal showed that the claimed technological solution was publicly launched in 2001, and then adopted by Amazon pursuant to a Non-Disclosure Agreement for a trial period. It is undisputed that the live Amazon pricing trial was hugely successful, reflecting a substantial improvement over Amazon's conventional pricing approach. After the trial, Amazon expressed continued interest, including conducting interviews of the inventors for possible employment and discussing the purchase by Amazon of the company. OIP's technology was so effective at real-time analysis of consumer demand that it was projected to increase Amazon's total contribution margin by more than $100 million in 2002 alone. Amazon chose not to obtain OIP's technology by legitimate means. The patent covering OIP's solution issued in 2011, and OIP sued Amazon for infringing the patent on the technology Amazon misappropriated ten years prior.

The panel—upon review of a district court finding of ineligibility on a motion to dismiss—found OIP's claims ineligible. Specifically, the panel found that the concept of offer-based pricing is "similar to other 'fundamental economic concepts' found to be abstract ideas by the Supreme Court and this court." Slip Op. at 6. The panel found that the lack of preemption by OIP's claims does not make them less abstract, and that the computer implementation itself was conventional. *Id.* at 6-9. More specifically, the panel found that "the claims describe the automation of the fundamental concept of offer-based price optimization through the use of generic-computer function." *Id.* at 7.

The panel decision cites to *Alice* and many post-*Alice* cases involving claims that were patent ineligible, but the panel's opinion does not address OIP's primary argument on appeal: that the inventive concept in OIP's claims is the same as the inventive concept in *Diehr*'s claims, and OIP and *Diehr* are not distinguishable on their facts. *See* Plaintiff's Principal Br. at 41-49, Reply Brief at 4-13. While acknowledging, as it must, that the *Diehr* claims involving a well-known mathematical equation and prior-art generic components were found eligible because they involved "a process designed to solve a technological problem in 'conventional industry practice'," the panel failed to apply that precedent to OIP's claims. Slip Op. at 9. Instead, the panel apparently concluded that, because both

7

OIP's claims and *Alice*'s claims involve application of economic principles, *Diehr* does not apply to either. *Id.*

## ARGUMENT

### I.    REHEARING *EN BANC* IS WARRANTED BECAUSE THE PANEL'S DECISION IS INCONSISTENT WITH *DIEHR*, *ALICE*, AND *BILSKI*

#### A.    OIP's Claims Are Patent Eligible For The Same Reason That The *Diehr* Claims Were Eligible

Even if the first step of the *Alice* test were satisfied (as discussed below it was not), the innovative aspects of OIP's claims cannot be distinguished from the inventive aspects of the *Diehr* claims, and the Panel made no finding that they are different. The *Diehr* claims were directed to a temperature-testing regime implemented on a generic computer, using generic prior-art measurement tools, applying the well-known Arrhenius equation, and addressing the problem of having to guess about the optimal time to cure rubber. *See Diamond v. Diehr*, 450 U.S. 175, 177-178 (1981). The *Diehr* Court explained (as has been acknowledged recently by this Court) that the inventive concept in *Diehr* was the step of "constantly measuring the actual temperature inside the mold." *Id.* at 178, 179 n.5. *See also Buysafe,* 765 F.3d at n.1 (Fed. Cir. 2014).

Likewise, OIP's claims are directed to a price-testing regime implemented on conventional computer components, applying known principles of microeconomics, and addressing the prior art problem of having to guess at the

demand curve for a given product. Plaintiff's Principal Br. at 41-49, Reply Brief at 4-13. The inventive concept in OIP's claims is the step of constantly measuring actual demand for actual products based on multiple actual prices in real time.

Importantly, the panel decision did not address or make any finding about how the inventive concept in *Diehr* was distinguishable from the inventive concept in OIP's claims. *See* Slip Op. at 9. And, indeed, it could not have done so. To say that the temperature-testing regime claimed in *Diehr* is different than OIP's price-testing regime would require applying the *Alice/Mayo* test differently to a method for operating a rubber mold than it does to a method of operating e-commerce infrastructure, an approach that would flout the Supreme Court's pronouncement in *Bilski* that business methods are not categorically ineligible. *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3225 (2010).

Second, the undisputed record of this case shows—and the panel made no contrary finding—that OIP's technology solved a technological problem in a conventional industry practice, just as in *Diehr*. The panel decision does not question that Amazon misappropriated OIP's patented technology. Nor does the panel question that the patented technology that Amazon stole from OIP and implemented throughout its business was and is an enormously valuable and technologically important improvement over Amazon's conventional practices. Both of those facts are sufficient for patent eligibility under *Alice* and *Diehr*, even

if the technology were implemented using conventional computer components and if the claims applied known abstract principles.

### B.    The Panel Improperly Disregarded *Diehr*

The panel failed to address the fundamental argument raised in OIP's appeal: that the precedent and rationale of *Diehr* in view of *Alice* controls the eligibility of OIP's claims. Slip OP. at 9. Instead, the panel makes a handful of observations about *Diehr*, none of which distinguish *Diehr* from OIP, but that collectively serve to remove *Diehr* from the Supreme Court's patent-eligibility framework.

The panel first noted that *Alice* emphasized that *Diehr* "does not stand for the general proposition that a claim implemented on a computer elevates an otherwise ineligible claim into a patent-eligible improvement." *Id.* at 9. While correct, that statement is not relevant to OIP's appeal—OIP does not claim that what makes its claims eligible is the fact of computer implementation. *See* Reply Br. at 18-19. *Diehr* stands for the inverse principle, that the exclusive use of conventional computer components cannot defeat eligibility where the invention improves a technological process, and that the latter inquiry is the critical one.

The panel then notes that the real relevance of *Diehr* is that it was about a "process designed to solve a technological problem in 'conventional industry practice.'" Slip Op. at 9 (quoting *Diehr*). But instead of applying that correct statement of law to OIP's claims, the panel simply notes that *Diehr* did not save

10

the *Alice* claims which were directed to an abstract idea and so cannot save OIP's claims. *Id.* To so find, the panel necessarily relied on at least one of two incorrect legal principles, either: (1) the second step of the *Alice/Mayo* test cannot be satisfied by the patentee where the claim uses "generic computers" to implement what was determined in the first step to be an abstract concept; or (2) a *Diehr*-like testing regime cannot be patentable in claims related to commercial activity. The first principle impermissibly would let the *Alice/Mayo* test trump *Diehr* in every instance. The second principle would ignore the Court's admonition in *Bilski*.

Finally, the panel notes in a parenthetical that the *Alice* Court found that the *Alice* claims did not "effect an improvement in any other technology or technical field." Slip Op. at 9 (quoting *Alice*, citing *Diehr*). Again, the panel makes no finding that OIP's claims did not effect such an improvement, nor could it in view of the undisputed factual record in this case.[1] Accordingly, this finding in *Alice* cannot be a proper basis for the panel to find that OIP's claims are not eligible under *Diehr*.

---

[1] *Cf. Versata Dev. Group, Inc. v. SAP, Am., Inc.*, Appeal No. 2014-1194, 2015 U.S. App. LEXIS 11802 (Fed. Cir. July 9, 2015). There, the Court found that Versata's pricing-related claims were "more akin to creating organizational management charts," *Id.* at *48-49, and were "not sufficiently similar to the claims in *Diehr*" to show them to be patent eligible. *Id.* at *68. Unlike *Versata*, which essentially involved pen-and-paper organization charts, OIP's claims are sufficiently similar to the claims in *Diehr* (claiming, as in *Diehr*, a novel testing regime), which the panel decision did not address as Supreme Court precedent requires.

11

**C.     On The Facts In This Case, OIP's Claims Cannot Be Found Ineligible On The Pleadings**

The district court based its determination that OIP's claims were directed to abstract ideas on impermissible fact finding and a basic failure to credit the facts as pled in OIP's complaint as it was required to do by Rule 12(b)(6). The panel did not address this fundamental problem with the district court's conclusion. As OIP explained in its Principal Brief, the district court's decision on a motion to dismiss is subject to *de novo* review in which this Court, like the district court, must "accept the plaintiffs' allegations as true and construe them in the light most favorable to the plaintiffs." *See* Plaintiff's Principal Br. at 28 (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013)). Although the panel decision acknowledged *K-Tech* and the *de novo* standard of review, it did not acknowledge or address the crucial requirement that OIP's factual allegations in its complaint be taken as true and construed in the light most favorable to OIP. *See* Slip Op. at 5. This omission was legal error and was critical in the outcome of the appeal because giving proper credit to OIP's factual allegations, a determination on the pleadings that OIP's claims were drawn to abstract subject matter under the first prong of *Alice* would be impossible.[2]

---

[2] As OIP argued to the panel, this Court has acknowledged that a legal determination of validity under Section 101 may be based on underlying factual issues. *See* Plaintiff's Principal Br. at 28 n.2 (discussing *Accenture Global Servs. v.*

As OIP explained in its briefing, the district court based its determination that OIP's claims were drawn to abstract subject matter on its own factual determinations based on no evidence and without any discovery that the technology OIP had claimed was as old as time and used by all. As OIP informed the panel, the district court concluded that OIP had only claimed "what any business owner or economist does in calculating a demand curve for a given product" and that "a merchant in a bazaar could have performed OIP's invention centuries ago—and no doubt did." Appellant's Principal Br. at 37 (quoting A28).

This determination was based on no evidence and—crucially—contrary to the pleadings. As OIP explained, it must be taken as true that even Amazon itself was not using OIP's invention until the OIP inventors taught Amazon how. OIP detailed in its Principal Brief how its complaint laid out the history of Amazon's test run of the OIP inventors' claimed technology: "the OIP software caused such a massive improvement over Amazon's then-existing e-commerce pricing technology that it increased the contribution margin of Amazon's consumer

---

*Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) and its treatment of the subsequently vacated *Ultramercial* decision, explaining that despite this vacatur, the better view was that the ultimate legal conclusion of invalidity under Section 101 could indeed depend on facts). This is exactly what happened here. But although the panel decision cites *Accenture* for the proposition that Section 101 presents a question of law subject to de novo review, it does not acknowledge that *Accenture* also acknowledged the possibility of underlying facts. *See* Slip Op. at 5.

electronics unit by **seven percent of revenue** over less than a two-month period . . . . If applied to all of Amazon's business, the OIP invention was estimated to represent more than a **$100 million** increase in contribution margin for 2002 alone." *Id*. at 4. Thus, OIP argued before the panel that the district court's foundational assertions were divorced from any facts of record, in disregard of the crucial technological contributions of OIP's novel testing regime, and squarely contradicted by the pleadings. The panel did not address this fundamental problem and thereby let stand the district court's legally impermissible rejection of the facts as pled.

Because the district court based its determination that the claims were drawn to abstract subject matter on its own *ex nihilo* fact finding and on its rejection of the facts as pled, its decision constituted a fundamental violation of the core requirements of Rule 12. To be clear, OIP does not intend to suggest that a Section 101 determination cannot properly be made at the motion to dismiss stage **if** it can be made as a matter of law. But where the determination is based as it was here on *sua sponte* fact finding contradicting the facts in the complaint, this is a straightforward violation of the core requirements of Rule 12. For this reason as well, the panel decision should be revisited by the *en banc* Court.

## CONCLUSION

For the reasons described above, the petition for rehearing *en banc* should be granted.


Dated: July 13, 2015                    Respectfully submitted,


                                         /s/   *Matthew D. Powers*
                                        Matthew D. Powers
                                        Steven S. Cherensky
                                        Paul T. Ehrlich
                                        Aaron M. Nathan
                                        Stefani C. Smith
                                        TENSEGRITY LAW GROUP, LLP
                                        555 Twin Dolphin Drive, Suite 650
                                        Redwood Shores, CA 94065
                                        Phone:  (650) 802-6000
                                        Fax:  (650) 802-6001

                                        *Attorneys for*
                                        *Plaintiff-Appellant OIP Technologies, Inc.*

15

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**NOTICE OF ENTRY OF
JUDGMENT ACCOMPANIED BY OPINION**

OPINION FILED AND JUDGMENT ENTERED: 06/11/2015

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

cc: Gabriel Bell
Steven Cherensky
Jeffrey H. Dean
Paul Ehrlich
Richard Gregory Frenkel
Gregory G. Garre
Matthew J. Moore
Aaron Matthew Nathan
Matthew D. Powers
Stefani Smith

12-1696 - Oip Technologies, Inc. v. Amazon.com, Inc.
United States District Court for the Northern District of California, Case No. 12-CV-1233

# United States Court of Appeals
# for the Federal Circuit

———————————

**OIP TECHNOLOGIES, INC.,**
*Plaintiff-Appellant*

**v.**

**AMAZON.COM, INC.,**
*Defendant-Appellee*

———————————

2012-1696

———————————

Appeal from the United States District Court for the Northern District of California in No. 12-CV-1233, Judge Edward M. Chen.

———————————

Decided:  June 11, 2015

———————————

MATTHEW D. POWERS, Tensegrity Law Group, LLP, Redwood City, CA, argued for plaintiff-appellant.  Also represented by STEVEN CHERENSKY, PAUL EHRLICH, STEFANI SMITH, AARON MATTHEW NATHAN.

GREGORY G. GARRE, Latham & Watkins LLP, Washington, DC, argued for defendant-appellee.  Also represented by GABRIEL BELL, MATTHEW J. MOORE; RICHARD GREGORY FRENKEL, Menlo Park, CA; JEFFREY H. DEAN, Amazon.com., Inc., Seattle, WA.

———————————

2                    OIP TECHNOLOGIES, INC. v. AMAZON.COM, INC.

Before TARANTO, MAYER, and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HUGHES.

Concurring opinion filed by *Circuit Judge* MAYER.

HUGHES, *Circuit Judge*.

OIP Technologies alleges that Amazon.com infringes a patent that relates to a method of price optimization in an e-commerce environment. The district court granted judgment on the pleadings, concluding that the patent does not claim patentable subject matter under 35 U.S.C. § 101. Because we agree with the district court that the patent-in-suit claims no more than an abstract idea coupled with routine data-gathering steps and conventional computer activity, we affirm.

I

In March 2012, OIP Technologies filed suit against Amazon.com alleging infringement of U.S. Patent No. 7,970,713, which claims computer-implemented methods for "pricing a product for sale." *See, e.g.*, '713 patent col. 16 ll. 2–39 (claim 1). The '713 patent explains that traditionally merchandisers manually determine prices based on their qualitative knowledge of the items, pricing experience, and other business policies. In setting the price of a particular good, the merchandiser estimates the shape of a demand curve for a particular product based on, for example, the good itself, the brand strength, market conditions, seasons, and past sales. *Id.* at col. 1 ll. 62 – col. 2 l. 2; col. 2 ll. 62–66. The '713 patent states that a problem with this approach is that the merchandiser is slow to react to changing market conditions, resulting in an imperfect pricing model where the merchandiser often is not charging an optimal price that maximizes profit. *Id.* at col. 2 ll. 13–19.

Accordingly, the '713 patent teaches a price-optimization method that "help[s] vendors automatically

OIP TECHNOLOGIES, INC. v. AMAZON.COM, INC.                    3

reach better pricing decisions through automatic estimation and measurement of actual demand to select prices." *Id.* at col. 8 l. 15–17.  Claim 1 recites:

1. A method of pricing a product for sale, the method comprising:

testing each price of a plurality of prices by sending a first set of electronic messages over a network to devices;

wherein said electronic messages include offers of said product;

wherein said offers are to be presented to potential customers of said product to allow said potential customers to purchase said product for the prices included in said offers;

wherein the devices are programmed to communicate offer terms, including the prices contained in the messages received by the devices;

wherein the devices are programmed to receive offers for the product based on the offer terms;

wherein the devices are not configured to fulfill orders by providing the product;

wherein each price of said plurality of prices is used in the offer associated with at least one electronic message in said first set of electronic messages;

4                    OIP TECHNOLOGIES, INC. v. AMAZON.COM, INC.

> gathering, within a machine-readable medium, statistics generated during said testing about how the potential customers responded to the offers, wherein the statistics include number of sales of the product made at each of the plurality of prices;
>
> using a computerized system to read said statistics from said machine-readable medium and to automatically determine, based on said statistics, an estimated outcome of using each of the plurality of prices for the product;
>
> selecting a price at which to sell said product based on the estimated outcome determined by said computerized system; and
>
> sending a second set of electronic messages over the network, wherein the second set of electronic messages include offers, to be presented to potential customers, of said product at said selected price.

*Id.* at col. 16 ll. 2–39. Thus, claim 1 has the following relevant limitations: (1) testing a plurality of prices; (2) gathering statistics generated about how customers reacted to the offers testing the prices; (3) using that data to estimate outcomes (i.e. mapping the demand curve over time for a given product); and (4) automatically selecting and offering a new price based on the estimated outcome. The dependent claims add various computer elements such as including webpages as advertisements in the second set of messages and generating statistics. *See, e.g.*, *id.* at col. 16 ll. 56–60 (claim 5), col. 18 ll. 1–22 (claims 17-18) .

Amazon filed a motion to dismiss OIP's complaint, arguing that the '713 patent is drawn to patent-ineligible subject matter.  The district court granted Amazon's motion, finding that the asserted claims merely use a general-purpose computer to implement the abstract idea of "price optimization" and is therefore ineligible for patent protection under 35 U.S.C. § 101.  J.A. 22.  The district court reasoned that without the "insignificant computer-based limitations," the claims merely "describe what any business owner or economist does in calculating a demand curve for a given product."  J.A. 28.

OIP appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We apply regional circuit law to the review of motions to dismiss.  *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013).  The Ninth Circuit reviews appeals of a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo.  *Id.*  Our review "is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice." *Id.*  Patent eligibility under 35 U.S.C. § 101 is an issue of law reviewed de novo.  *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013).

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct.

1289, 1293 (2012)).  Under the now familiar two-part test described by the Supreme Court in *Alice*, "[w]e must first determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  If so, we must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Id.* (quoting *Mayo*, 132 S. Ct. at 1298, 1297).

Here, the claims are directed to the concept of offer-based price optimization.  Claim 1 broadly recites a "method of pricing a product for sale," and the specification describes the invention as an "automatic pricing method and apparatus for use in electronic commerce." '713 patent col. 2 ll. 49–50; *id.* at col. 1 ll. 27–31.  This concept of "offer based pricing" is similar to other "fundamental economic concepts" found to be abstract ideas by the Supreme Court and this court. *See, e.g., Alice,* 134 S. Ct. at 2357 (intermediated settlement); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (risk hedging); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (using advertising as an exchange or currency); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (data collection); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1346 (Fed. Cir. 2013) (generating tasks in an insurance organization).  And that the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract.  *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (collecting cases); *Accenture*, 728 F.3d at 1345.

Beyond the abstract idea of offer-based price optimization, the claims merely recite "well-understood, routine conventional activit[ies]," either by requiring conventional

OIP TECHNOLOGIES, INC. v. AMAZON.COM, INC.          7

computer activities or routine data-gathering steps. *Alice,* 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294) (alterations in original). Considered individually or taken together as an ordered combination, the claim elements fail "to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298). For example, claim 1 recites "sending a first set of electronic messages over a network to devices," the devices being "programmed to communicate," storing test results in a "machine-readable medium," and "using a computerized system . . . to automatically determine" an estimated outcome and setting a price. Just as in *Alice*, "all of these computer functions are 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294) (alterations in original); *see also buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). Moreover, the claims are exceptionally broad and the computer implementation limitations do little to limit their scope. Indeed, the specification makes clear that this "programming" and the related computer hardware "refers to any sequence of instructions designed for execution on a computer system." '713 patent col. 6 ll. 31–33.

At best, the claims describe the automation of the fundamental economic concept of offer-based price optimization through the use of generic-computer functions. Both the prosecution history and the specification emphasize that the key distinguishing feature of the claims is the ability to automate or otherwise make more efficient traditional price-optimization methods. For example, the specification states that a core advantage of the invention is reducing the "extremely high testing costs" of "[b]rute force live price testing." *Id.* at col. 3 ll. 10–11. Likewise,

the patentee distinguished traditional pricing research, by emphasizing that "the techniques described in [the prior art] generally cost more and take more time, and are less accurate than the technique recited in [the claims]." J.A. 393. And "automatically determining an estimated outcome using each of the plurality of prices for the product . . . means that pricing decisions are made with more granularity." J.A. 525. But relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible. *See Alice*, 134 S. Ct. at 2359 ("use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions" is not an inventive concept); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (a computer "employed only for its most basic function . . . does not impose meaningful limits on the scope of those claims"); *cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258–59 (Fed. Cir. 2014) (finding a computer-implemented method patent eligible where the claims recite a specific manipulation of a general-purpose computer such that the claims do not rely on a "computer network operating in its normal, expected manner").

Nor does the claims' recitation of "present[ing] [offers] to potential customers" and "gathering . . . statistics generated during said testing about how the potential customers responded to the offers" provide a meaningful limitation on the abstract idea. These processes are well-understood, routine, conventional data-gathering activities that do not make the claims patent eligible. *See Alice*, 134 S. Ct. at 2359; *Mayo*, 132 S. Ct. at 1298. Like the claims in *Mayo*, which added only the routine steps of administering medication and measuring metabolite levels for the purposes of determining optimal dosage, here the addition of steps to test prices and collect data based on customer reactions does not add any meaningful

limitations to the abstract idea. *Mayo*, 132 S. Ct. at 1297–98; *see also Alice,* 134 S. Ct. at 2357 ("'Simply appending conventional steps, specified at a high level of generality,' was not '*enough*' to supply an 'inventive concept.'") (quoting *Mayo*, 132 S. Ct. at 1300, 1297, 1294); *see also Ultramercial*, 772 F.3d at 716 ("[T]he steps of consulting and updating an activity log represent insignificant 'data-gathering steps,' . . . and thus add nothing of practical significance to the underlying abstract idea.") (citations omitted).

On appeal OIP focuses its arguments on comparing the claimed invention to the invention found patent eligible in *Diamond v. Diehr*, 450 U.S. 175 (1981). However, we must read *Diehr* in light of *Alice,* which emphasized that *Diehr* does not stand for the general proposition that a claim implemented on a computer elevates an otherwise ineligible claim into a patent-eligible improvement. *Alice*, 134 S. Ct. at 2358. Rather, *Diehr* involved "a 'well-known' mathematical equation . . . used . . . in a process designed to solve a technological problem in 'conventional industry practice.'" *Id.* (quoting *Diehr*, 450 U.S. at 177, 178). Just as *Diehr* could not save the claims in *Alice*, which were directed to "implement[ing] the abstract idea of intermediated settlement on a generic computer", *Alice,* 134 S. Ct. at 2358–59, it cannot save OIP's claims directed to implementing the abstract idea of price optimization on a generic computer. *See id.* at 2359–60 ("Nor do [the claims] effect an improvement in any other technology or technical field.") (citing *Diehr*, 450 at 177–78).

III

We have considered all of OIP's arguments and find them unpersuasive. Because the '713 patent claims the abstract idea of offer-based price optimization and lacks an "inventive concept" sufficient to "transform" the

10                    OIP TECHNOLOGIES, INC. v. AMAZON.COM, INC.

claimed subject matter into a patent-eligible application
of that idea, we affirm.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

———————————

**OIP TECHNOLOGIES, INC.,**
*Plaintiff-Appellant*

**v.**

**AMAZON.COM, INC.,**
*Defendant-Appellee*

———————————

2012-1696

———————————

MAYER, *Circuit Judge*, concurring.

I write separately to address the argument advanced by OIP Technologies, Inc. that the district court erred in resolving the patent eligibility issue on the pleadings. Failure to recite statutory subject matter is the sort of "basic deficiency," that can, and should, "be exposed at the point of minimum expenditure of time and money by the parties and the court," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations and internal quotation marks omitted). Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents. Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings. *See, e.g., Content Extraction & Transmis-*

Case: 12-1696    Document: 60    Page: 32    Filed: 07/13/2015

Case: 12-1696    Document: 59-2    Page: 12    Filed: 06/11/2015    (13 of 15)


2                OIP TECHNOLOGIES, INC. v. AMAZON.COM, INC.

*sion LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed.
Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709,
717 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765
F.3d 1350, 1352 (Fed. Cir. 2014).  I commend the district
court's adherence to the Supreme Court's instruction that
patent eligibility is a "threshold" issue, *Bilski v. Kappos*,
561 U.S. 593, 602 (2010), by resolving it at the first oppor-
tunity.

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Panel Rehearing (Fed. Cir. R. 40)**
**and**
**Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the

merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U. S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

INFORMATION SHEET

FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

Time. The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

Fees. Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

Authorized Filer. The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

Format of a Petition. The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

Number of Copies. Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

Where to File. You must file your documents at the Supreme Court.

Clerk
Supreme Court of the United States
1 First Street, NE
Washington, DC 20543
(202) 479-3000

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

Access to the Rules. The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2015, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

/s/ *Matthew D. Powers*
Matthew D. Powers